**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MALINDA L. MASON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:23-cv-00175** |
| | ) | |
| **THE BANK OF NEW YORK MELLON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Pending before the Court is Defendant Bank of New York Mellon's ("BONY") Motion to Dismiss (Doc. No. 7), to which Plaintiff Malinda L. Mason ("Ms. Mason") has responded in opposition (Doc. No. 11). For the reasons that follow, BONY's motion will be granted.

**FACTUAL BACKGROUND**

On June 15, 2004, Ms. Mason and James M. Kemp Sr. ("Mr. Kemp") entered into a Note (Doc. No. 7-1) secured by a Deed of Trust (Doc. No. 7-2) on property located at 934 32nd Ave. N., Nashville, TN 37209 (the "Property").[1] On the original Deed of Trust, Countrywide Home

[1] The Court refers to several documents referenced or attached to the Complaint or the Motion to Dismiss to piece together the facts in this case. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008). Each of the documents the Court refers to are public records registered with Davidson County, Tennessee's Register of Deeds or are referenced in the Complaint and central to this case. (See Doc. No. 1-1 ¶¶ 7-8 (describing Plaintiff as the "mortgage holder" and referencing the "mortgage" of the Property, which the Court understands to be the June 15, 2004 Note and Deed of Trust)); (id. ¶ 34 (explicitly referencing the June 15, 2004 Deed of Trust)); (id. ¶ 34 (referencing "Modification Agreement(s)", which the Court understands to be the May 7, 2014 Modification Agreement)); (Doc. No. 1-1 Ex. A (attaching the December 9, 2022 Notice of Foreclosure to the Complaint)). The July 20, 2011 Assignment of the Deed of Trust to BONY is a public record.

Loans, Inc. ("Countrywide") was the Lender, Ms. Mason and Mr. Kemp were the Borrowers,[2] and an attorney residing in Memphis, Arnold M. Weiss, was the Trustee. (Doc. No. 7-2 at Definitions (B)-(D)). Through executing the Note and Deed of Trust, Ms. Mason promised to pay Countrywide $59,600.00 plus interest at a rate of 5.875% beginning August 1, 2004 and ending July 1, 2019, the Maturity Date of the Note. (Doc. No. 7-1 §§ 1-3). Ms. Mason agreed to pay down the Note in monthly installments of $498.92. (Id. § 3). She further agreed that if any of her monthly payments was more than 15 days late, she would pay a late charge amounting to 5.00% of the overdue payment of principal and interest. (Id. § 6(A)).

The Deed of Trust contains several provisions related to Ms. Mason's payment obligation and the Lender's rights relative to her payment. Relevant here, the Deed of Trust states:

> Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. . . . Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.

---

[2] While neither party addressed Mr. Kemp's current relationship to the Property or the Note and Deed of Trust, a simple title search indicates that Mr. Kemp sold his right to title of the Property to Ms. Mason for $7,000.00 consideration on October 4, 2006. (See Quitclaim Deed Registered in Davidson County, No. 20061009-0125093). Mr. Kemp's name, however, remains on the Note and Deed of Trust as well as on a May 7, 2014 Modification Agreement Ms. Mason entered into with Bayview Loan Servicing, LLC, though he did not sign that Modification Agreement. (See Doc. No. 7-4). Mr. Kemp's name also appears on a December 9, 2022 Notice concerning the impending foreclosure of the Property. (See Doc. No. 1-1 Ex. A). Nevertheless, the Court is limited by the facts the parties have presented. Because neither party has alleged that Mr. Kemp has any continuing responsibility to make payments toward the Note and Deed of Trust, and because it appears Mr. Kemp relinquished his title to the Property in 2006, the Court treats Ms. Mason as the sole Borrower on the Note, Deed of Trust, and Modification Agreement.

(Doc. No. 7-2 § 1).

After Countrywide assigned the Deed of Trust to BONY,[3] (Doc. No. 7-3), and prior to May 7, 2014, Ms. Mason fell behind on her monthly mortgage payments. On May 7, 2014, Ms. Mason entered into a Home Affordable Modification Agreement ("Modification Agreement") with the mortgage loan servicer at the time, Bayview Loan Servicing, LLC. (Doc. No. 7-4). The Modification Agreement amends the Deed of Trust, in relevant part, by waiving all unpaid late charges Ms. Mason had not paid prior to May 1, 2014, entering a new principal balance on the Note of $56,495.74, reducing the interest rate on the Note from 5.875% to 5.00%, and reducing Ms. Mason's total monthly payment from $498.92 to $480.34. (Id. § 3(B)-(C)). The original Maturity Date of July 1, 2019 did not change. (Id. § 3(A)). In executing the Modification Agreement, Ms. Mason agreed that:

> all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

(Doc. No. 7-4 § 4(F)).

After entering into the Modification Agreement, Ms. Mason again fell behind on her mortgage payments. (Doc. No. 1-1 ¶¶ 16, 50). Ms. Mason spoke with representatives from BONY and attempted to negotiate additional loan modifications. (Id. ¶ 13). While Ms. Mason was seeking additional loan modifications, BONY gave Ms. Mason inconsistent orders on payment of

[3] Countrywide assigned the Deed of Trust "unto THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATE HOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2004-18CB, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2004-18CB. . ." (Doc. No. 7-3).

the loan. BONY "instructed [her] to not make payments" on the loan. (Id. ¶ 14). BONY then denied her loan modification requests, and by then she "was further behind on the loan due to following the direction given to her by BONY" not to make payments. (Id.). BONY's representatives then "solicited amounts due on the mortgage." (Id. ¶ 22). However, BONY then returned Ms. Mason's payments as "insufficient to bring the account current, despite them being in the amount directed by BONY representatives." (Id.).

Ms. Mason was still in default on her loan on the Maturity Date of July 1, 2019. It is unclear from the facts alleged in the Complaint[4] what, if any, conversations Ms. Mason had with BONY following the Maturity Date, though it is alleged she "is now receiving threatening phone calls and letters from BONY suggesting that they may exercise their remedies under default in the mortgage agreement, including foreclosure." (Id. ¶ 23). On December 9, 2022, Mickel Law Firm, P.A., acting as Substitute Trustee for BONY, sent Ms. Mason a Notice informing her that her property would be foreclosed on January 26, 2023 ("Notice of Foreclosure"). (Id. Ex. A). As of the date of the Complaint, the Property had not been foreclosed. (See id. at Prayer for Relief 2).

**LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The "factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Cabinets to Go, LLC v. Qingdao

[4] Throughout this Opinion, the "Complaint" references Ms. Mason's February 27, 2023 Complaint (Doc. No. 1-1), the "Memorandum" references BONY's March 6, 2023 Memorandum in Support of Motion to Dismiss (Doc. No. 8), and the "Response" references Ms. Mason's April 10, 2023 Response to Bank of New York's Motion to Dismiss (Doc. No. 11).

Haiyan Real Est. Grp. Co., 605 F. Supp. 3d 1051, 1057 (M.D. Tenn. 2022) (quoting Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010)), *reconsideration denied sub nom*. No. 3:21-CV-00711, 2023 WL 5013055 (M.D. Tenn. Aug. 7, 2023). In reviewing a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." Courtright v. City of Battle Creek, 839 F.3d 513, 518 (6th Cir. 2016). However, the Court will "disregard bare legal conclusions and naked assertions" and "afford[] the presumption of truth only to genuine factual allegations." Dakota Girls, LLC v. Philadelphia Indem. Ins. Co., 17 F.4th 645, 648 (6th Cir. 2021) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2007)) (internal quotations omitted). Nor can the Court "credit a threadbare recital of the elements of a cause of action ... supported by mere conclusory statements." Dakota Girls, 17 F.4th at 648 (citing Iqbal, 556 U.S. at 678)) (internal quotations omitted). "Ultimately, only a complaint that states a plausible claim for relief survives a motion to dismiss." Dakota Girls, 17 F.4th at 648 (quoting Iqbal, 556 U.S. at 679)) (internal quotations omitted).

When a complaint raises fraud claims, it must meet a heightened pleading standard by "stat[ing] with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Specifically, the complaint "at a minimum, must allege the time, place, and content of the alleged misrepresentation on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." Hard Surfaces Solutions, LLC v. Construction Management, Inc., 544 F. Supp. 3d 825, 830 (M.D. Tenn. 2021) (quoting United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 501 F.3d 493, 503 (6th Cir. 2007)) (internal quotations omitted).

## ANALYSIS

**Count I – Fair Debt Collection Practices Act**

Ms. Mason alleges that BONY violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, (the "FDCPA") by engaging in "false and/or misleading statements . . . regarding the state of the mortgage loan" and "irregular and deceptive actions in servicing the mortgage loan." (Doc. No. 1-1 ¶¶ 30-31). BONY makes three arguments for dismissing this claim: (1) "Plaintiff does not allege what role, if any, BONY in its individual capacity has with respect to the Loan" and thus "has failed to sufficiently allege that BONY is a creditor subject to the FDCPA", (Doc. No. 8 at 4-5); (2) BONY is not a debt collector under the FDCPA, (id.); and (3) "Plaintiff fails to identify what activity BONY engaged in that is prohibited under the FDCPA", (id.). Ms. Mason counters that BONY is a debt collector as defined in the FDCPA because it is "merely the trustee for the actual creditor – the Certificate Holders of the CWALT, Inc. Alternative Loan Trust 2004-18CB Mortgage Pass Through Certificates." (Doc. No. 11 at 1). Ms. Mason further contends that BONY violated the FDCPA because "the loan should not have been in default but for the actions and/or inactions of BONY" and as such "the statements made in furtherance of collecting same were therefore false and misleading." (Id. at 2). She does not address BONY's argument that BONY is not a creditor.

To allege a claim under the FDCPA, "(1) plaintiff must be a consumer as defined by the Act; (2) the debt must arises [sic] out of transactions which are primarily for personal, family or household purposes; (3) defendant must be a debt collector as defined by the Act; and (4) defendant must have violated § 1692e's prohibitions." Wallace v. Washington Mut. Bank, F.A., 683 F.3d 323, 326 (6th Cir. 2012) (internal quotations omitted). Ms. Mason's claim fails because BONY is not a debt collector as defined by the FDCPA.

As an initial matter, the Court rejects the argument that Ms. Mason's FDCPA claim should be dismissed because she has not alleged BONY is a creditor. (Doc. No. 8 at 4-5). BONY also contends that *creditors cannot be debt collectors* subject to the FDCPA. (Id. at 5). This catch-22 styled argument misses the mark. Ms. Mason need not allege that BONY is a creditor in order to establish her FDCPA claim. See Wallace, 683 F.3d at 326 (providing the four elements of an FDCPA claim). Rather, the FDCPA provides that "any *debt collector* who fails to comply with any provision of this subchapter with respect to any person is liable to such person . . ." 15 U.S.C. § 1692k(a) (emphasis added). BONY seeks to require Ms. Mason to prove BONY was the creditor to her Note and Deed of Trust in order to bring an FDCPA claim, but at the same time asks the Court to dismiss that claim because BONY is a creditor rather than a debt collector. To require Ms. Mason to prove an element that would kill her claim in order to adequately plead that claim is nonsensical, which may be why BONY has not cited a single case supporting this argument. BONY instead relies on Union Guardian Tr. Co. v. Detroit Tr. Co. for the proposition that "a company acts in an entirely different capacity from its individual capacity when serving as a trustee." 72 F.2d 120, 121 (6th Cir. 1934). That case concerned whether the court had personal jurisdiction over Union Guardian Trust Company in its individual capacity when Union had appeared before the court in the same matter in its capacity as trustee. See id. It is inapposite as to whether Ms. Mason must prove BONY is a creditor to bring a claim under the FDCPA.

To bring an FDCPA claim against BONY, Ms. Mason must adequately allege that BONY is a debt collector as defined by the Act. Wallace, 683 F.3d at 326; 15 U.S.C. § 1692a(6). Neither the Complaint nor BONY's Memorandum clearly articulates whether BONY is the lender or trustee (or both) of the Deed of Trust. This ambiguity ultimately does not matter because in either scenario, BONY is not a debt collector under the FDCPA.

If BONY is the lender of the Deed of Trust, then it is a creditor under the FDCPA. The FDCPA defines a creditor as "any person who offers or extends credit creating a debt or to whom a debt is owed . . ." 15 U.S.C. § 1692a(4). It then specifically exempts "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor" from the definition of "debt collector." 15 U.S.C. § 1692a(6)(A). The Complaint alleges that BONY employees made threatening calls to Ms. Mason seeking to collect payment under her Deed of Trust and Modification Agreement. (Doc. No. 1-1 ¶ 23). Because Ms. Mason alleges that BONY tried to collect her debts for itself, BONY is not a debt collector under the FDCPA and Ms. Mason's claim fails.

If BONY is a trustee but not a lender under the Deed of Trust, Ms. Mason's FDCPA claim is still problematic. Neither party acknowledged that the Supreme Court recently spoke directly to the issue of whether an entity enforcing a security interest through a non-judicial foreclosure proceeding is a debt collector under the FDCPA. See Obduskey v. McCarthy & Holthus LLP, 586 U.S. ---- ; 139 S.Ct. 1029, 1033 (2019). In that case, the plaintiff, Obduskey, sued a law firm, McCarthy & Holthus LLP ("McCarthy") after it initiated nonjudicial foreclosure proceedings against Obduskey when he defaulted on his mortgage. Id. at 1035. McCarthy had been hired by Wells Fargo Bank, Obduskey's mortgage lender, to "act as its agent in carrying out a nonjudicial foreclosure." Id. McCarthy argued that it could not be sued under the FDCPA because it is not a debt collector, and the United States District Court for the District of Colorado and Tenth Circuit Court of Appeals agreed. Id. Writing for a unanimous court, Justice Breyer held that debt collectors in the principal business of enforcing security interests are not subject to the myriad requirements the FDCPA imposes on debt collectors, with one exception: these entities are "subject to the specific prohibitions contained in § 1692f(6)." Id. at 1036. Section 1692f(6)

prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if— (A) there is no present right to possession of the property . . .; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement." In reaching this conclusion, Justice Breyer emphasized that the FDCPA includes a "limited-purpose definition" of debt collector which.

> poses a serious, indeed an insurmountable, obstacle to subjecting McCarthy to the main coverage of the Act. It says that '*[f]or the purpose of section 1692f(6)*' a debt collector '*also* includes' a business, like McCarthy, 'the principal purpose of which is the enforcement of security interests.' This phrase, particularly the word 'also,' strongly suggests that one who does no more than enforce security interests does *not* fall within the scope of the general definition. Otherwise, why add this sentence at all?

Id. at 1037. (emphasis in original).

Here, the Complaint does not plausibly allege that BONY's conduct is prohibited by 15 U.S.C. § 1692f(6). Instead, the allegations show that BONY did intend to take possession of the Property by having its agent, the Mickel Law Firm, mail her the Notice of Foreclosure on December 9, 2022. (See Doc. No. 1-1 Ex. A). Because it intended to take possession of the Property, BONY's "threatening phone calls and letters . . . suggesting that they may exercise their remedies under default in the mortgage agreement, including foreclosure", (id. ¶ 23), are not prohibited by § 1692f(6). Therefore, Ms. Mason has not alleged that BONY violated any provision of the FDCPA to which it is subject, so this claim must fail.

**Count II – Breach of Contract**

Ms. Mason alleges that BONY breached the Deed of Trust and Modification Agreement by "fail[ing] to apply funds properly" which "has resulted in damages to Plaintiff in the form of late fees and damage to her credit report, further inhibiting her ability to become current through refinance." (Doc. No. 1-1 ¶¶ 34-35). BONY argues that this claim must be dismissed because "Plaintiff fails to allege the existence of any enforceable contract with BONY in its individual

capacity" rather than "BONY as Trustee", (Doc. No. 8 at 6), and because Ms. Mason has failed to identify any provision of the Deed of Trust that BONY breached, (id. at 7). Ms. Mason disagrees and relies on the allegations that the complaint "that the Note, Deed of Trust, and the Modification Agreement are contracts between the parties." (Doc. No. 11 at 2). She further argues that "[t]he complaint alleges that BONY's failure to properly apply funds created late fees, caused [Ms. Mason] damage to her credit report, and created the default in her account", which Ms. Mason asserts are violations of Sections 1 and 2 of the Deed of Trust. (Id. at 3).[5]

To assert a claim for breach of contract, Ms. Mason must show "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract." Kryder v. Estate of Rogers, 296 F.Supp.3d 892, 907-08 (M.D. Tenn. 2017) (quoting Ingram v. Cendant Mobility Fin. Corp., 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006)). Ms. Mason's claim fails because she has not alleged that BONY breached any provision of the Deed of Trust or Modification Agreement.

Ms. Mason has alleged a valid contract between her and BONY. Ms. Mason alleges that BONY negotiated a loan modification with her, (Doc. No. 1-1 ¶ 14), deceived her into not making payments and becoming more delinquent under the Deed of Trust, (id. ¶ 16), and "solicited amounts due on the mortgage from [her] and then returned them as being insufficient to bring the account current," (id. ¶ 22). She further alleges that she "is now receiving threatening phone calls and letters from BONY suggesting that they may exercise their remedies under default in the

[5] The Complaint appears to allege that the terms of the May 7, 2014 Modification Agreement "were not as promised" because "the principal outstanding increased and the interest rate was higher than promised." (Doc. No. 1-1 ¶ 19). That assertion is irrelevant for the purpose of deciding Ms. Mason's breach of contract claim. Ms. Mason does not dispute that she executed the Modification Agreement and that it is a valid contract. (Id. ¶ 34; Doc. No. 11 at 2). The Court will not consider Ms. Mason's vague assertions that its terms are different from what was promised to her.

mortgage agreement, including foreclosure." (Id. ¶ 23). All of these actions plausibly allege that BONY is a party to the Deed of Trust and Modification Agreement. Furthermore, the Notice of Foreclosure sent to Ms. Mason by the Mickel Law Firm, which she attached to her Complaint, states that "This firm has been retained by THE BANK OF NEW YORK MELLON . . . to proceed with a foreclosure of the referenced property." (Doc. No. 1-1 Ex. A).

BONY's arguments distinguishing between BONY in its individual capacity versus as trustee are not persuasive. BONY has not challenged its personal jurisdiction. It did not attest in its Business Entity Disclosure that it "has parent corporations" or that "[a]nother publicly held corporation or another publicly held entity has a direct financial interest in the outcome of this litigation." (See Doc. No. 2). It does not argue that it is a parent entity not liable for the acts of a subsidiary. See Rhynes v. Bank of America, 2016 WL 4533035, *12 (W.D. Tenn. Jan. 19, 2016). And it does not contest the allegations that BONY representatives have negotiated potential loan modifications with Ms. Mason, returned payments to her, charged her late fees, and retained the Mickel Law Firm to foreclose on her property. In light of these facts, the Court is not inclined to hold that the BONY entity Ms. Mason sued is not a party to the contracts at issue in this case.[6]

Though Ms. Mason has adequately pleaded the existence of multiple contracts between her and BONY, she has not adequately alleged that BONY breached the terms of the Note, Deed of Trust, or Modification Agreement. Reading the allegations in the light most favorable to Ms. Mason, she alleges that BONY breached the Deed of Trust and Modification Agreement by returning her partial payments on her overdue loan balance rather than crediting those payments

[6] To completely satisfy the issue of BONY's relationship to the Certificate Holders of CWALT, Inc. Alternative Loan Trust 2004-18CB, Mortgage Pass Through Certificates, Series 2004-18CB, the Court would have to order discovery into that relationship. However, the Court need not get to the bottom of that relationship to decide BONY's motion on other grounds.

toward her balance. (Doc. No. 1-1 ¶¶ 8, 21-22). Through this "misappl[ication]" of her partial payments, BONY charged Ms. Mason additional late fees, damaged her credit, and increased the amount of her default. (Id. ¶¶ 20, 35-36). Ms. Mason also makes the conclusory assertion that she "has compared payments made to amortization schedules run on the mortgage, and the amounts claimed by BONY to be due as both principal balance and as payoff do not compute mathematically." (Id. ¶ 9). These allegations are of no moment because the Deed of Trust explicitly allows BONY to "return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current," even if BONY previously accepted a partial payment from Ms. Mason. (Doc. No. 7-2 § 1). Curiously, Ms. Mason highlights this provision in her Response to BONY's motion but provides no argument for how BONY's conduct runs counter to that provision. (Doc. No. 11 at 2). Thus, BONY's return of Ms. Mason's partial payments was not a misapplication of those payments, but rather was explicitly allowed under the Deed of Trust. Nor does the Modification Agreement amend the Deed of Trust to remove this provision. (See generally Doc. No. 7-4). And the Modification Agreement makes clear that any provision of the Deed of Trust not specifically amended by the terms of the Modification Agreement continues to be effective. (See id. § 4(F)).

Ms. Mason also alleges that "BONY has charged fees and late fees that were not warranted, permitted, or disclosed to [her]." (Doc. No. 1-1 ¶ 20). This conclusory assertion that BONY charged late fees not allowed under the Note, Deed of Trust, or Modification Agreement is not enough to state a claim for breach of contract. Dakota Girls, 17 F.4th at 648. In any case, the agreements permit BONY to charge Ms. Mason late fees under certain circumstances. (See Doc. No. 7-1 § 6(A); Doc. No. 7-2 § 1). Because Ms. Mason has not stated any facts surrounding the

circumstances under which she was charged late fees, she has not plausibly alleged any breach of these agreements by BONY.

Ms. Mason also appears to assert that BONY breached the Deed of Trust and Modification Agreement by not entering into additional modifications with her. (See Doc. No. 1-1 ¶¶ 13-14). This claim, too, is unavailing. Ms. Mason does not point to any section in the Deed of Trust or Modification Agreement that requires BONY to enter into any modification with her, nor does the Court's independent analysis of those agreements find any such provision. To the extent that Ms. Mason alleges BONY representatives promised to modify her loan, Tennessee's statute of frauds prohibits her from seeking to enforce an oral promise to modify a mortgage. See Tenn. Stat. Ann. § 29-2-101(b)(1). Furthermore, Ms. Mason appears to abandon this argument in her Opposition to BONY's Motion to Dismiss. (See Doc. No. 11 at 2 (characterizing one of BONY's arguments as "a promise to modify is not a valid contract" and stating that this argument "miss[es] the theory of the case.")). Because BONY had no obligation to modify Ms. Mason's loan under the agreements, it cannot be in breach of those agreements by failing to do so. See, e.g., Hogrobrooks v. Wells Fargo Bank, N.A., No. 19-5609, 2020 WL 7231501, *3 (6th Cir. Jun. 9, 2020).

Ms. Mason has not alleged any breach by BONY of the Note, Deed of Trust or Modification Agreement, so her breach of contract claim must be dismissed.

**Count IV – Fraud, and Count V – Fraudulent Inducement**[7]

Counts IV and V of the Complaint allege that BONY committed fraud by "making promises to [her] regarding various modification plans . . . that they never had any intention to follow through on their promises." (Doc. No. 1-1 ¶ 40). Her fraudulent inducement claim alleges the same underlying conduct. (See id. ¶ 46). BONY has moved to dismiss because the allegations

[7] The Complaint does not assert a Count III.

do not meet the heightened pleading standard for fraud claims. (Doc. No. 8 at 8-9). Ms. Mason responds that she "pled with specificity" that "BONY instructed her to stop making payments in order to qualify for the modification . . . [but] the modification was denied, leaving her behind an impossible amount to recover from, despite her following BONY's directions." (Doc. No. 11 at 3). She further argues that her allegations "may be fleshed out further through discovery." (Id.). Because the same analysis applies to both claims, the Court addresses the two claims together below.

To successfully plead a claim based in fraud, a plaintiff must meet a heightened pleading standard under Fed. R. Civ. P. 9(b). Specifically, a plaintiff "at a minimum, must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." Hard Surfaces Solutions, 544 F. Supp. 3d at 830 (quoting United States ex rel. Bledsoe, 501 F.3d at 503) (internal quotations omitted). There is good reason for applying this heightened standard to claims of fraud. The Sixth Circuit has identified four purposes behind Rule 9(b): "(1) to alert defendants to the particulars of the allegations against them so they can intelligently respond; (2) to prevent fishing expeditions; (3) to protect defendants' reputations against fraud allegations; and (4) to whittle down potentially wide-ranging discovery to only relevant matters." SFS Check, LLC v. First Bank of Delaware, 774 F.3d 351, 358 (6th Cir. 2014) (internal quotations omitted).[8]

Ms. Mason has failed to meet the heightened pleading standard. Construing the Complaint in the light most favorable to Ms. Mason, she alleges that "BONY representatives" defrauded her

[8] Other Circuits similarly acknowledge the rationale for the heightened pleading standard. The Second Circuit has said "Rule 9(b) is designed provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." Campaniello Imports, Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 663 (2d Cir. 1997) (internal quotations omitted).

by telling her to stop making payments on her loan while she sought a modification and then denying that modification. (Doc. No. 1-1 ¶¶ 14, 16). She further alleges that BONY representatives told her to make partial payments on her loan, but then returned those payments to her. (Id. ¶¶ 21-22). But she does not specify who at BONY made these statements to her or when these statements were made. This lack of specificity is especially troubling here, where the statements could have been made by any of BONY's thousands of employees at any time over the more than ten years since she entered into the Modification Agreement. Because Ms. Mason has not adequately pleaded her claims for fraud and fraudulent inducement, they must be dismissed.

**Count VI – Fair Credit Reporting Act**

Ms. Mason stated in her Response to BONY's Motion to Dismiss that "Plaintiff does not contest [BONY's] argument under the FCRA and agrees that the claim should be stricken." (Doc. No. 11 at 3-4). Accordingly, Count VI will be dismissed.

**Count VII – Breach of the Covenant of Good Faith and Fair Dealing**

Ms. Mason alleges that BONY breached the duty of good faith and fair dealing by "moving the finish line for the modification(s), and not applying payments correctly." (Doc. No. 1-1 ¶ 61). In its Motion to Dismiss, BONY argues that Tennessee does not recognize a separate cause of action for the breach of good faith and fair dealing. (See Doc. No. 8 at 8 n.2). Ms. Mason did not respond to this argument. BONY is correct that the breach of the covenant of good faith and fair dealing is not a standalone claim. Shah v. Racetrac Petroleum Co., 338 F.3d 557, 572 (6th Cir. 2003). "A cause of action purportedly for breach of the covenant of good faith and fair dealing is properly construed as one of breach of contract." Davidson v. Arlington Community Schools Board of Educ., 847 Fed. App'x 304, 310 (6th Cir. 2021) (citing Wallace v. Nat'l Bank of Commerce, 938 S.W.2d 684, 685 & n.1 (Tenn. 1996)).

The Court has already addressed and dismissed Ms. Mason's breach of contract claim. Because her claim for breach of the covenant of good faith and fair dealing cannot stand, it will be dismissed.

**CONCLUSION**

For the forgoing reasons, BONY's Motion to Dismiss will be granted. An appropriate Order will be entered.

WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE